# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60058

United States Court of Appeals
Fifth Circuit

**FILED**

October 16, 2015

Lyle W. Cayce
Clerk

PATRICK K. HEMPHILL,

        Plaintiff - Appellant

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

        Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before BENAVIDES, CLEMENT, and HIGGINSON, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

This appeal involves an insurance dispute between an insured and his insurance carrier regarding the handling of a third-party claim. Plaintiff-Appellant Patrick K. Hemphill ("Hemphill"), the insured, appeals the district court's grant of summary judgment to Defendant-Appellee State Farm Mutual Automobile Insurance Company ("State Farm"), the insurer. For the reasons below, we AFFIRM.

## I. BACKGROUND

This case arises out of a motor vehicle accident that occurred in Forrest County, Mississippi. On February 1, 2009, Hemphill ran a stop sign, resulting in a collision between the vehicle he was driving and a vehicle driven by

No. 15-60058

Rodney Taylor ("Mr. Taylor"), in which Mr. Taylor's wife Heather Taylor ("Mrs. Taylor") (collectively, the "Taylors") was a passenger. As a result of the accident, Mr. Taylor was rendered paraplegic. Hemphill's father owned the vehicle driven by Hemphill at the time of the accident. State Farm insured the vehicle under an automobile liability policy issued to Hemphill's father as the named insured. The policy provided $50,000 per person liability coverage for bodily injury.

Initially, Hemphill and his girlfriend, a passenger in his vehicle at the time of the accident, claimed the girlfriend had been driving because Hemphill's license was suspended. Hemphill and his girlfriend also initially claimed they did not run the stop sign and Mr. Taylor caused the accident. Hemphill later admitted to his father that he was the driver, and they contacted an attorney. Hemphill, Hemphill's father, and two attorneys then met with the Mississippi Highway Patrol, at which time Hemphill admitted he was the driver and he ran the stop sign. State Farm did not receive notice of Hemphill's admission that he ran the stop sign until it received the Mississippi Highway Patrol's accident report on February 25, 2009. On that same date, a State Farm investigator called Mrs. Taylor and advised her that State Farm was accepting liability and sending her medical authorizations. State Farm claims this investigator also explained the $50,000 policy limit to Mrs. Taylor during this conversation, but Hemphill disputes this claim. Mr. Taylor had approved State Farm to speak to Mrs. Taylor about his claim, although he continuously communicated with Mrs. Taylor about his claim as she handled it.

State Farm proceeded to request the Taylors' medical bills from their healthcare providers. State Farm finally received all the medical bills on June 2, 2009. One bill showed Medicaid involvement, so State Farm began to investigate a Medicaid lien on Mr. Taylor's recovery. State Farm offered to

2

No. 15-60058

settle Mrs. Taylor's claim for $15,000 on July 6, 2009, Mrs. Taylor declined this offer on July 14, 2009, and State Farm then offered to settle Mrs. Taylor's claim for $20,000 on July 17, 2009. State Farm has provided evidence that during this same time, it also offered to settle Mr. Taylor's claim for $50,000 subject to the Medicaid lien, but Hemphill has provided evidence that State Farm did not offer to settle Mr. Taylor's claim at this time. On August 10, 2009, Mr. Taylor filed a personal injury lawsuit against Hemphill in Mississippi state court (the "Underlying Lawsuit"). On August 12, 2009, State Farm offered to settle Mrs. Taylor's claim for $20,000 and Mr. Taylor's claim for $50,000. At this time, State Farm provided a certificate of coverage to Mr. Taylor's attorney. The Taylors declined this settlement offer. On September 1, 2009, State Farm offered to settle both Mr. and Mrs. Taylor's claims for $50,000 each, which the Taylors declined. The Taylors did not make any settlement offers or counteroffers of their own, nor did they manifest any interest in settling.

Two years later, on August 11, 2011, a jury in the Underlying Lawsuit returned a verdict in Mr. Taylor's favor for $2,862,920.84, plus interest. State Farm subsequently paid the $50,000 policy limits, with interest, to Mr. Taylor in partial satisfaction of the judgment.

On September 23, 2013, Hemphill filed the present lawsuit against State Farm in the United States District Court for the Southern District of Mississippi, contending inter alia that State Farm's breach of its fiduciary duty caused the excess judgment in the Underlying Lawsuit. On January 13, 2015, the district court granted State Farm's motion for summary judgment, finding any alleged breach of duty did not cause the excess judgment. Hemphill now appeals the district court's order. Mr. Taylor's attorneys in the Underlying Lawsuit represent Hemphill in the present lawsuit.

No. 15-60058

## II. STANDARD OF REVIEW

"We review a district court's ruling on a motion for summary judgment *de novo* and apply the same legal standards as the district court." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Id.* "We must view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party." *Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). "We are not limited to the district court's reasons for its grant of summary judgment and may affirm the district court's summary judgment on any ground raised below and supported by the record." *Rogers*, 755 F.3d at 350 (internal quotation marks omitted).

## III. APPLICABLE LAW

"When, as in this case, subject matter jurisdiction is based on diversity, federal courts apply the substantive law of the forum state—here, [Mississippi]." *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)). "To determine the forum state's law, we look first to the final decisions of that state's highest court— here, the [Mississippi] Supreme Court." *Id.* "In the absence of a final decision by the [Mississippi] Supreme Court, we must make an *Erie* guess and

No. 15-60058

determine, in our best judgment, how that court would resolve the issue if presented with the same case." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).   In making an *Erie* guess, we "may look to the decisions of intermediate appellate state courts for guidance." *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000).

## IV. ANALYSIS

This appeal presents two main issues.  The first issue is whether an insurer can be liable for an excess judgment against its insured absent a settlement offer within policy limits by a third-party claimant.  Specifically, Hemphill contends an insurer can be liable absent a settlement offer by a third-party claimant in two instances: (i) when the insurer does not timely offer to settle a claim in which the claim amount greatly exceeds the policy limits, and (ii) when the insurer does not timely disclose the policy limits to the third-party claimant.  The second issue is whether there is a genuine dispute of material fact that the excess judgment in this case was caused by State Farm's failure to advise Hemphill of his potential excess exposure and his right to retain independent counsel.  Each issue is addressed in turn.

### A.   An Insurer's Liability for an Excess Judgment Against its Insured Absent a Settlement Offer Within Policy Limits by a Third-Party Claimant

The Mississippi Supreme Court "consistently ha[s] held that an insurer must act in the best interest of the insured." *Indem. Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.*, 99 So. 3d 142, 150 (Miss. 2012).  The insurer has a fiduciary "duty to protect the interests of its insured" when defending, negotiating, and settling "all claims made against its insured." *Id.* at 150–51. The Mississippi Supreme Court has defined the scope of this duty when a third-party claimant makes a settlement offer within the policy limits:

> [W]hen [a] suit covered by a liability insurance policy is for a sum
> in excess of the policy limits, and an offer of settlement is made

5

No. 15-60058

> within the policy limits, the insurer has a fiduciary duty to look
> after the insured's interest at least to the same extent as its own,
> and also to make a knowledgeable, honest[,] and intelligent
> evaluation of the claim commensurate with its ability to do so. If
> the carrier fails to do this, then it is liable to the insured for all
> damages occasioned thereby.

*Id.* at 151 (quoting *Hartford Accident & Indem. Co. v. Foster*, 528 So. 2d 255, 265 (Miss. 1988)) (second and third alterations in original) (internal quotation marks omitted). Thus, an "insurer is not required to accept a settlement offer simply because it is within the policy limits," but when such an offer is made, an insurer has a duty to evaluate the claim and settle if the offer is "objectively reasonable." *S. Healthcare Servs., Inc. v. Lloyd's of London*, 110 So. 3d 735, 748, 751 (Miss. 2013) (alteration in original) (internal quotation marks omitted). Mississippi courts have not specifically addressed whether an insurer owes settlement-related duties to its insured when a third-party claimant has *not* made a settlement offer. Whether a duty exists is a question of law to be decided by the court; whether a duty is breached is a question of fact. *Indem. Ins. Co. of N. Am.*, 99 So. 3d at 153.

Here, it is undisputed the Taylors did not make a settlement offer. Hemphill contends that notwithstanding the Taylors' failure to make a settlement offer, State Farm breached the following two duties: (i) to timely offer to settle the claim because the claim amount greatly exceeded the policy limits, and (ii) to timely disclose the policy limits to the Taylors. We address, in turn, whether an insurer owes these two duties to its insured absent a settlement offer within the policy limits by a third-party claimant.

### i. Whether an Insurer Has a Duty to Timely Offer to Settle a Claim in Which the Claim Amount Greatly Exceeds the

No. 15-60058

**Policy Limits, Absent a Settlement Offer by the Third-Party Claimant**

Considering the facts in the light most favorable to Hemphill, State Farm made a settlement offer to Mr. Taylor on August 12, 2009, which was five and a half months after State Farm received notice of Hemphill's admission that he ran the stop sign, two months after State Farm received all of Mr. Taylor's medical bills, and two days after Mr. Taylor filed the Underlying Lawsuit.  Hemphill contends State Farm had a duty to make this settlement offer earlier because State Farm knew Mr. Taylor's claim amount greatly exceeded the policy limits.   However, Hemphill does not provide any Mississippi authority—and the Court finds none—that has placed a duty on the insurer to make a settlement offer absent a settlement offer by the claimant.

Rather, Hemphill solely relies on a statement by the Mississippi Supreme Court in its 1983 *Hartford* opinion, which said that "there is authority for the proposition that in dangerous cases it is the duty of the insurance carrier to initiate settlement offers on its own," with citation to cases in other states.  *Hartford Accident & Indem. Co.*, 528 So. 2d at 274.  However, this statement is just dictum,[1] and no Mississippi court since *Hartford* has discussed this dictum or cited to the non-binding cases that the court in *Hartford* cited.   Subsequent applications of *Hartford* by the Mississippi Supreme Court in a duty-to-settle context have either imposed a duty to settle

---

[1] This statement is dictum because the claimant in *Hartford* made a settlement offer. *Hartford Accident & Indem. Co.*, 528 So. 2d at 260, 263.  Further, this statement was not made in the context of analyzing an insurer's settlement duties.  One issue in *Hartford* was the duties owed by an insurer to its insured when a claimant makes a settlement offer, while a second issue was the duties owed by an attorney retained by the insurer to represent the insured.  *Id.* at 257.  This statement was made while analyzing the latter issue—specifically, whether the failure by one such attorney to advise the insured to seek independent counsel caused the insured damages.  *Id.* at 274.

7

No. 15-60058

when the claimant made a settlement offer, *e.g.*, *Home Ins. Co. v. Miss. Ins. Guar. Ass'n.*, 904 So. 2d 95, 97 (Miss. 2004) (en banc), or found "no evidence that the [i]nsurers breached any duty in failing to settle th[e] claim at an earlier time" when the claimant did not initially make a settlement offer and the insurer sufficiently evaluated the claim, *S. Healthcare Servs.*, 110 So. 3d at 750–51. None of the Mississippi cases that have applied *Hartford* have found an insurer has a duty to make a settlement offer when the claimant has not made a settlement offer.

Indeed, over the thirty-three years since *Hartford*, no case from either the Mississippi Supreme Court or a Mississippi intermediate appellate court has suggested or even hinted that the Mississippi Supreme Court would hold that an insurer has a duty to make a settlement offer absent a settlement offer by the claimant. Therefore, this Court makes an *Erie* guess that the Mississippi Supreme Court would not impose such a duty under the circumstances presented herein. Accordingly, the district court did not err in granting summary judgment to State Farm on the offer of settlement issue, and the district court's order as to this issue is affirmed.[2]

### ii. Whether an Insurer Has a Duty to Timely Disclose the Policy Limits to a Third-Party Claimant

Hemphill also contends State Farm had a duty to timely disclose the policy limits to the Taylors both verbally and in writing via a certificate of coverage. In so claiming, Hemphill reasons that the Taylors could not have made an informed settlement offer without knowledge of the policy limits.

---

[2] The district court held that even if Mississippi law imposes a duty on an insurer to initiate settlement within a certain time period absent a settlement offer by the claimant, "State Farm would nevertheless be entitled to summary judgment under the facts of this case because the element of causation is lacking." The district court found causation lacking because of evidence that the Taylors would not have accepted a settlement offer in the relevant time period. This Court declines to reach this causation issue because there is no such duty to settle under Mississippi law.

No. 15-60058

As to whether an insurer has a duty to timely disclose the policy limits verbally, even assuming arguendo that such a duty exists, there is no genuine dispute that State Farm verbally disclosed the policy limits to the Taylors before Mr. Taylor filed the Underlying Lawsuit. Thus, State Farm did not breach any such duty. According to one of State Farm's claims notes, a State Farm investigator explained to Mrs. Taylor the coverages available under the policy during a telephone conversation on February 25, 2009, which was the same day State Farm received notice of Hemphill's admission that he ran the stop sign, and five and a half months before Mr. Taylor filed the Underlying Lawsuit. In Mr. Taylor's deposition, he was asked, "[I]sn't it true that someone at State Farm told your wife there was $50,000 per person coverage?" He replied, "They did and I told them [to] [s]end me a copy of it." He then clarified that he was in the room while this conversation between State Farm and Mrs. Taylor occurred via speaker phone and that he told Mrs. Taylor to ask for written confirmation of the policy limits. Thus, both State Farm's claims notes and Mr. Taylor's testimony support a finding that State Farm verbally disclosed the policy limits to the Taylors. Hemphill claims Mrs. Taylor's deposition testimony creates a genuine dispute as to this fact, characterizing Mrs. Taylor's testimony as a denial that State Farm ever disclosed the policy limits to her. However, Hemphill's characterization of Mrs. Taylor's testimony is inaccurate. Instead of denying disclosure, Mrs. Taylor testified she does not remember State Farm telling her the policy limits. Indeed, the deposition questioning was nuanced with respect to the difference between denying disclosure and not remembering disclosure. Mrs. Taylor said that she does not deny disclosure and that "[State Farm] possibly could have [explained the coverage available] but [she] does not remember." Mrs. Taylor recalled all of the February 29, 2009 conversation as reported in the claims notes except for the explanation of coverage. Lack of memory by itself is insufficient to create

No. 15-60058

a genuine dispute of fact. *Dickey v. Baptist Mem'l Hosp.–N. Miss.*, 146 F.3d 262, 266 n.1 (5th Cir. 1998) ("The mere fact that [the witness] does not remember the alleged phone conversation, however, is not enough, by itself, to create a genuine issue of material fact."). Therefore, Mrs. Taylor's testimony that she does not remember disclosure does not create a genuine dispute as to whether disclosure occurred. Based on all of the evidence, there is no genuine dispute that State Farm verbally disclosed the policy limits to the Taylors before Mr. Taylor filed the Underlying Lawsuit. Accordingly, assuming without deciding that an insurer has a duty to timely disclose the policy limits to a third-party claimant verbally, in this case there is no genuine dispute that State Farm did not breach any such duty.

As to whether an insurer has a duty to timely disclose the policy limits in writing via a certificate of coverage, Hemphill does not provide any binding authority to support imposing such a duty. Instead, he provides cases from states other than Mississippi in which those courts have found that an insurer can be liable for an excess judgment absent a settlement offer when the insurer does not disclose the policy limits at the request of the claimant. *See Boicourt v. Amex Assurance Co.*, 93 Cal. Rptr. 2d 763, 768 (Cal. Ct. App. 2000); *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. Dist. Ct. App. 1991). However, not only are those cases not binding, they do not differentiate between different methods of disclosure, and they involve complete non-disclosure. *See Boicourt*, 93 Cal. Rptr. 2d at 763–70; *Powell*, 584 So. 2d at 13–15. Unlike in those cases, here there is no genuine dispute that State Farm verbally disclosed the policy limits before the Underlying Lawsuit was filed. Moreover, Hemphill does not dispute that State Farm provided the certificate of coverage two days after Mr. Taylor filed the Underlying Lawsuit; rather, Hemphill simply contends State Farm should have provided the certificate of coverage earlier. Nothing in Mississippi law provides an adequate basis for

10

No. 15-60058

this Court to make an *Erie* guess that the Mississippi Supreme Court would hold an insurer has a duty to provide a claimant with a certificate of coverage before suit is filed after already having verbally informed the claimant of the policy limits. Therefore, this Court makes an *Erie* guess that the Mississippi Supreme Court would not impose such a duty under the circumstances presented herein.

In summary, there is no genuine dispute that State Farm verbally disclosed the policy limits to the Taylors before Mr. Taylor filed the Underlying Lawsuit. Having verbally disclosed the policy limits, State Farm did not have an additional duty to disclose the policy limits in writing via a certificate of coverage before Mr. Taylor filed the Underlying Lawsuit. Accordingly, the district court did not err in granting summary judgment to State Farm on the disclosure issue, and the district court's order as to this issue is affirmed.

### B. Failure of an Insurer to Advise the Insured of His Potential Excess Exposure and His Right to Retain Independent Counsel

State Farm does not contest that it did not advise Hemphill of his potential excess exposure and right to retain independent counsel. Hemphill contends the district erred in finding no genuine dispute that this failure did not cause the excess judgment. Assuming arguendo that an insurer has a duty to advise the insured of his potential excess exposure and right to retain independent counsel, any breach of such duty must be the cause of the insured's damages in order for the insurer to be liable for those damages. *See Liberty Mut. Fire Ins. Co. v. Canal Ins. Co.*, 177 F.3d 326, 336–37 (5th Cir. 1999) (applying Mississippi law); *Hartford Accident & Indem. Co.*, 528 So. 2d at 275. State Farm contends its failure to advise did not cause the excess judgment because Hemphill already knew about his potential excess exposure and consulted independent counsel.

11

No. 15-60058

In his deposition testimony, Hemphill stated that as early as the day of the accident, he knew about the seriousness of Mr. Taylor's injuries from Mr. Taylor's hospital staff. Hemphill further stated that within approximately a couple of weeks after the accident and at least before the Underlying Lawsuit, he met with Mark Holmes ("Holmes"), an attorney that had represented Hemphill's father in the past. Holmes and another attorney also accompanied Hemphill when he met with the Mississippi Highway Patrol, at which time Hemphill admitted he was the driver and ran the stop sign. When asked why he involved an attorney at that time, he replied that it was "[f]or protection" financially from "[s]omething similar to the 2.8 million dollar verdict that [he] got." Hemphill further testified that before Mr. Taylor filed the Underlying Lawsuit, Hemphill understood that he and his father faced potential exposure in excess of their insurance. Hemphill stated he "guess[es] [his potential excess exposure] would be something Mr. Holmes told [him,]" while his father told him about his father's own potential excess exposure. Although Hemphill could not recall when he first learned about the $50,000 policy limits specifically, he stated he "probably" learned about the limits from Holmes. Additionally, Hemphill stated he "do[es]n't know if [he] was damaged or not" from State Farm's failure to tell him about his excess exposure or his right to get his own attorney, and he does not know what he would have done differently had he been told. In Hemphill's father's deposition testimony, he said that if State Farm would have informed him about the potential excess judgment, he would have hired an attorney for Hemphill "who was more involved in litigation of this type" than Holmes. However, even after the Underlying Lawsuit was filed, Holmes continued to represent Hemphill throughout the Underlying Lawsuit.

Based on all of the evidence, there is no genuine dispute that before Mr. Taylor filed the Underlying Lawsuit, Hemphill was aware of his potential

No. 15-60058

excess exposure and consulted an independent attorney for financial protection. Thus, Hemphill independently knew the information that he complains State Farm did not advise him about. For these reasons, the district court did not err in finding no genuine dispute that the excess judgment was not caused by State Farm's failure to advise Hemphill of his potential excess exposure and right to retain independent counsel. Accordingly, the district court's grant of summary judgment to State Farm on the failure to advise issue is affirmed.

## V. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment to State Farm is AFFIRMED.